402 A.2d 745.

THERESA DIIORIO *vs.* ABINGTON MUTUAL FIRE INSURANCE COMPANY.

JUNE 21, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

690

WEISBERGER, J. This is a civil action in which the plaintiff, the named insured in a homeowner's insurance policy issued by the defendant Abington Fire Insurance Company (insurer), seeks to be indemnified for damage to her home allegedly caused by the freezing and bursting of plumbing pipes when a faulty oil burner broke down.

The case was tried to a jury in the Superior Court. The trial justice granted the insurer's motion for a directed verdict on November 26, 1976, and judgment was accordingly entered against plaintiff on November 29, 1976. The case is before us on appeal from this judgment pursuant to G.L. 1956 (1969 Reenactment) §9-24-1, as amended by P.L. 1975, ch. 244, §1.

The following evidence was adduced in the course of plaintiff's presentation of her case. On January 18, 1974, plaintiff left her house at 5 p.m. to visit her sister for the weekend. When she returned home 3 days later on January 21, 1974, at 2 p.m., she found that her house was cold, the cellar was flooded and water was running onto her kitchen floor through the ceiling above. The flooding caused extensive damage to her home and furnishings. Thereafter plaintiff's attorney contacted the insurer's agent on February 19, 1974 and advised the agent of the loss. The agent assigned the claim to an adjuster, Mr. Rourke, who sent a proof of loss form to plaintiff on April 12, 1974. The plaintiff completed the form and returned it to the adjuster on May 20, 1974. On

or about September 18, 1974, plaintiff received a letter from the adjuster advising her that the proof of loss form had been rejected for certain enumerated reasons:

"(a) The cause and origin of the loss is not truly stated;

"(b) The purported Proof of Loss does not truly state the value of the property allegedly damaged and destroyed;

"(c) The property alleged to have been damaged or destroyed has not been properly itemized;

"(d) The actual cash value of each item of loss and the amount of the loss thereto is not set forth."

The plaintiff submitted a second proof of loss form and received an identical rejection letter on October 18, 1974.

At this point, approximately 20 months after the date of the loss, plaintiff filed suit on November 15, 1974, against the insurer in the District Court. In her complaint, plaintiff alleged that the insurer had breached the terms of the insurance policy by rejecting her proof of loss even though the damage to her home was covered by the terms of the policy. As a result of this conduct of the insurer, plaintiff alleged that she incurred uncompensated expenses in restoring her home, sustained unreimbursed damages for loss of the use of her home and suffered emotional and physical stress. The plaintiff demanded judgment in the amount of $5,000, plus interest, costs and attorney's fees.

On July 7, 1975 plaintiff's attorney withdrew from the case. A new attorney was retained in his place and at his request the complaint was dismissed on July 22, 1975. The new attorney filed a second complaint in the Superior Court on August 15, 1975, approximately 19 months after the date of the loss. In the second complaint, plaintiff raised the demand for judgment to $500,000, plus interest, costs, and attorney's fees.

The second complaint consisted of two counts, one sounding in contract and the other in tort. Count I in

substance alleged a breach of duty of good faith and fair dealing between the parties to an insurance contract and requested a declaratory judgment concerning the parties' rights and liabilities under the contract. In Count II plaintiff alleged several tort theories of recovery, only one of which is relevant to this appeal. That theory of recovery is based on a breach of duty of good faith and fair dealing by the insurer.

The trial justice directed a verdict on Count I of the complaint on the basis that suit in the Superior Court was not commenced within the 1-year limitation of actions period contained in the insurance policy and that the Rhode Island saving statute, §9-1-22, which allows a new action to be brought within a year after termination under certain circumstances, does not apply where the dismissal of an action is voluntary. The trial justice also found that there was insufficient evidence in the record to establish a prima facie case of estoppel against the insurer. The trial justice directed a verdict on Count II on the basis that a cause of action in tort for a breach of the duty of good faith and fair dealing does not exist in this jurisdiction and even if it does, there is insufficient evidence in the record to withstand a motion for a directed verdict. The plaintiff appealed from the judgment entered pursuant to the granting of a directed verdict on each count.

On appeal from the granting of a motion for a directed verdict we have the same duty as the trial justice to view the evidence and the inferences to which it is reasonably susceptible in the light most favorable to plaintiff and without regard to its weight or the credibility of the witnesses, *Gonsalves* v. *First National Stores, Inc.*, 111 R.I. 438, 304 A.2d 44 (1973), in making the determination of whether the evidence is sufficient in law to support a verdict in plaintiff's favor. *Marshall* v. *Tomaselli*, 118 R.I. 190, 372 A.2d 1280 (1977); *Simeone* v. *Prato*, 82 R.I. 496, 111 A.2d 708 (1955).

The plaintiff contends that the trial justice erred in directing a verdict on Count I because the 1-year limitations period contained in the policy does not act as an absolute bar

to suit in every case. Although there have been situations in which we have not strictly enforced the limitations period, our review of the record reveals no evidence to support plaintiff's contention that the present case is one of them.

The limitations period in question is required to be included in every fire insurance policy by G.L. 1956 (1968 Reenactment) §27-5-3. Lines 157-161 of that section read as follows:

> "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve (12) months next after inception of the loss."

It is undisputed by the parties to this appeal that this term has been incorporated into the homeowner's policy which includes fire as one of the perils against which plaintiff is insured.

The rights and liabilities of the parties to an insurance contract are to be ascertained in accordance with the terms as set forth therein. *Donahue* v. *Hartford Fire Insurance Co.,* 110, R.I. 603, 295 A.2d 693 (1972). A 1-year limitations period in an insurance policy is a term to which the parties are specifically bound. *Greater Providence Trust Co.* v. *Nationwide Mutual Fire Insurance Co.,* 116 R.I. 268, 335 A.2d 718 (1976).

Our refusal to apply the 1-year limitations period contained in an insurance policy in cases cited by plaintiff, *Messler* v. *Williamsburg City Fire Insurance Co.,* 42 R.I. 460, 108 A. 832 (1920) and *Koury* v. *Providence-Washington Insurance Co.,* 50 R.I. 118, 145 A. 448 (1929), is completely consistent with the above stated rule. In those cases we determined as a matter of contract construction that the 1-year limitations period did not bar suit on the insurance policy. Once the parties agree to such a term, however, it is valid and binding upon them. In *Koury* we held that an injured plaintiff was not foreclosed from suit by a 1-year limitations

period in a policy to which he was not a party. The limitations period in that case was directed only to suits on the policy by an insured against the insurer and did not apply to third parties. In *Messler*, we found that a conflict existed between the 1-year limitations period and other clauses in the insurance policy because it was impossible for an insured acting diligently and in good faith to comply with all of the provisions of the policy with sufficient dispatch to enable him to bring suit within 12 months after the loss. We therefore declined to enforce the limitations period against the insured, because to do so would require him to perform an impossible act. No similar impediments to commencement of action exist in the present case.

The plaintiff also contends that the 1-year period should not begin to run until there is some clear indication by the insurer that plaintiff's claim will not be covered by the policy. Such an argument runs counter to the express terms of the insurance policy which states that the period shall run from the date of the loss.

This contention may also be viewed as an argument that certain conduct of the insurer has estopped it from asserting the limitations period as a defense to an action on the policy. The issue of an estoppel was raised below and was rejected by the trial justice. Our review of the record indicates that plaintiff's evidence is not sufficient to support a verdict based on estoppel. In order to rely upon estoppel to avoid the consequences of noncompliance with the 1-year limitations provision of the policy, an insured must prove the misleading conduct of the insurer and his reliance on that conduct to his detriment. *Greater Providence Trust Co.* v. *Nationwide Mutual Fire Insurance Co., supra*. The record indicates that plaintiff commenced suit in the District Court well within the limitations period. This evidence viewed even in the light most favorable to plaintiff shows that plaintiff was not lulled by the insurer into a reasonable belief that her claim would be settled without suit, but instead felt compelled to bring suit against the insurer to enforce her claim. Any detriment

plaintiff has suffered was not caused by statements or conduct of the insurer, questionable though they may be, but was caused by her own choice or that of counsel in voluntarily dismissing her District Court action. This dismissal left plaintiff in the same position as if she had never brought suit in the first place. *Ochoa* v. *Union Camp Corp.*, 120 R.I. 898, 391 A.2d 123 (1978).

The plaintiff argues nevertheless that she should receive the benefit of the saving statute, §9-1-22, which reads as follows:

> "Extension of time after termination of action. — If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or if he dies and the claim survives, his executor or administrator, may commence a new action upon the same claim within one (1) year after the termination."

We agree with the trial justice that the saving statute does not preserve plaintiff's cause of action here. The record indicates without contradiction that plaintiff's dismissal of her District Court suit was voluntary, and plaintiff does not argue otherwise on this appeal. The statute does not apply in favor of a plaintiff who abandons an action for no other cause than his own will or choice. *Gray* v. *Ahern*, 63 R.I. 363, 9 A.2d 38 (1939).

It if be argued that plaintiff dismissed the District Court action because of jurisdictional limits upon the amount of recovery in that court, it must be remembered that the original choice of forum was made by plaintiff.

The plaintiff also contends that the trial justice erred in directing a verdict on Count II of the complaint on the basis that no independent cause of action in tort for a breach of the duty of good faith and fair dealing by an insurer exists in this jurisdiction. The recent decision of this court in *A.A.A. Pool Service & Supply, Inc.* v. *Aetna Causalty & Surety Co.*, 121

R.I. 96, 395 A.2d 724 (1978) is dispositive of this issue. In that case we pointed out that the creation of an independent action in tort for a bad-faith rejection of a fire insured's claim would more properly be left to a legislative determination, especially in light of the fact that the terms of such fire insurance policies are set forth in a standard form prescribed by the Legislature in §27-5-3. Having deferred to the Legislature for resolution of this issue, we can only observe that an examination of the record in this case would not disclose facts of a sufficiently compelling nature to cause us to depart from our recently expressed view in connection with this homeowner's insurance policy which among other perils insures for fire loss.

We might note in this instance that the trial justice specifically determined that there was a lack of evidence necessary to create a jury question on the issue of bad faith on the part of the insurer. The record indicates that there was a substantial and genuine question in respect to coverage, as well as questions relating to the amount of the loss. Even if it should be argued that a homeowner's policy involves elements separate and distinct from the standard fire insurance policy, we believe that the principles enunciated in *A.A.A. Pool Service & Supply, Inc.* v. *Aetna Casualty & Surety Co., supra,* remain controlling here.[1]

For the foregoing reasons, the plaintiff's appeal is denied and dismissed, the judgment below is affirmed and the case is remanded to the Superior Court.

---

[1] Our decision to defer to legislative action in this area was reached in spite of our recognition of doctrines enunciated in *Gruenberg* v. *Aetna Ins. Co.,* 9 Cal. 3d 566, 510 P.2d 1032, 108 Cal. Rptr. 480 (1973), and a number of other cases in which the following are illustrative: *United States Fidelity & Guar. Co.* v. *Peterson,* 91 Nev. 617, 540 P.2d 1070 (1975); *Rova Farms Resort, Inc.* v. *Investors Ins. Co.,* 65 N.J. 474, 323 A.2d 495 (1974); *Christian* v. *American Home Assurance Co.,* 577 P.2d 899 (Okla. 1977); *see Stafford* v. *Westchester Fire Ins. Co.,* 526 P.2d 37 (Alaska 1974).

*Nugent & Nugent, J. Joseph Nugent, Jr.,* for plaintiff.

*Hanson, Curran & Parks, David P. Whitman,* for defendant.